# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| **JOSE QUIROZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:12-CV-212** |
| | ) | |
| **FEDERAL BUREAU OF INVESTIGATION** | ) | |
| **AGENT ROBERT HALL**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER[1]

This matter is before the Court on the motion to dismiss filed by defendants (docket at 71). Defendants filed a memorandum in support of this motion (docket at 72); plaintiff filed a response in opposition (docket at 85); and defendants filed a reply brief (docket at 98). For the reasons discussed below, the motion to dismiss is GRANTED in part and DENIED in part. The motion is granted as to plaintiff's state law claim against the United States for malicious prosecution; the motion is denied as to all other claims.

## BACKGROUND

Jose Quiroz was arrested on April 19, 2009, by federal agents conducting a drug trafficking investigation. The arrest was made pursuant to an arrest warrant issued in the Northern District of Indiana in the case of *United States of America v. Dwayne Crawford, et al.*, 2:08-CV-214. Quiroz was arrested at his home in Chicago, where he had lived and worked for many years. The federal agents, which included FBI agents, ATF agents, and other law

---

[1] This case was originally filed in the Eastern Division of the U.S. District Court for the Northern District of Illinois. The Hon. Blanche M. Manning granted a motion for change of venue filed by defendants and transferred the case to this Court (docket at 102).

enforcement agents, went to Chicago to arrest a man who went by the nickname "Chu," and who had tattoos on his back.  Certain of the agents had conducted surveillance near Quiroz's home and at one point saw a man they believed to be "Chu" pull into Quiroz's driveway, back out, park on the street, and enter a nearby residence (not Quiroz's).  Quiroz claims that based only on this surveillance information, the agents decided to arrest him.  Plaintiff's Brief, p. 2.  He claims that eight federal agents "with their guns drawn barged into the Quiroz home.  They pointed their guns at a shocked Mrs. Quiroz, scared the children, and rummaged through the home."  *Id*.  It is undisputed that the agents did not find any contraband in the Quiroz home.  Still, Mr. Quiroz was arrested as part of the drug conspiracy investigation.  Quiroz was charged by way of a superseding indictment with one count of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846, and several counts of knowingly and intentionally using a communications facility, namely a telephone, to facilitate a conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 843(b).  *See* Superseding Indictment, docket at 25, *U.S. v. Crawford, et al.,* 2:08-CR-214.  In the Superseding Indictment, Quiroz was named as "Jose A. Quiroz, a/k/a 'Chu.'"  Quiroz maintains that the defendants knew he was not "Chu," but that they arrested him anyway based on the mere fact that "Chu" turned around in Quiroz's driveway on one occasion.  Plaintiff's Brief, p. 2.  About 18 months after he was arrested, the government dismissed the charges against Quiroz.  *See* 2:08-CR-214, docket at 235.

Quiroz then filed this lawsuit against FBI agents Robert Hall and Lana Sabata; ATF agents Jessica Salley, Daniel Mitten, Mickey French, David Coulson, and Roger Crafton; Gary, Indiana, Police Sergeant Larry Robertson, and Gary, Indiana, Police Detective Justin Illyes; and the United States.  In his second amended complaint (docket at 63) Quiroz asserts a claim for

false arrest, a claim for a Fourteenth Amendment due process violation, a claim of "failure to intervene," a claim of conspiracy, and an Indiana state law claim against the United States for malicious prosecution.  Amended Complaint, docket at 63.  The defendants move to dismiss this case for several different reasons, as discussed below.

## STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case.  Under the "simplified notice pleading" of the Federal Rules of Civil Procedure, this court considers whether relief would be possible under any set of facts that could be established consistent with the allegations in the complaint.  *Venture Associates Corp. v. Zenith Data Systems*, 987 F.2d 429, 432 (7th Cir.1993).  Generally, mere vagueness or lack of detail does not constitute grounds for a motion to dismiss."  *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985).

When considering a defendant's motion to dismiss the court must view the complaint's allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  All well-pleaded facts and allegations in the plaintiff's complaint must be taken to be true, *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir. 1986), and the plaintiff is entitled to all reasonable inferences that can be drawn therefrom.  "Furthermore, a complaint is not required to allege all, or any, of the facts logically entailed by the claim ...  [A] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing."  *American Nurses Assn. v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986).

3

### 1.  Failure to Adequately Plead Personal Involvement.

The first ground defendants present for dismissal of Quiroz's complaint is that he failed to adequately plead that defendants were actually personally involved in any acts that caused Quiroz any constitutional deprivation.  Defendants' Memorandum, pp. 4-5.  Defendants argue that Quiroz's second amended complaint contains only vague and generalized allegations, with no facts to support them.  Defendants argue that "[t]he second amended complaint contains not one paragraph making single factual allegation attributed to any single individual defendant. This vague phrasing that 'defendants' did something, does not adequately connect specific defendants to an illegal act. . . . Thus, Quiroz has failed to adequately plead a constitutional violation that provides any specific defendant with notice of his claim."  *Id*.  Quiroz argues that his pleading is sufficient to put defendants on notice of his claims.  He points out that in his second amended complaint, at paragraph 8, he states that "Federal Agents Hall, Salley, Sabata, and Mitten oversaw this investigation and participated in major decisions including those related to the arrest and continued prosecution of Jose Quiroz."  He further states that in several paragraphs of his complaint he "attributes specific actions to Defendants by name."  Plaintiff's Response, p. 4.  He is referring specifically to paragraphs 14, 19, and 20.  *See* Second Amended Complaint, pp. 3-4.  In paragraph 14, Quiroz states that "Defendants Agent French, Agent Coulson, Agent Crafton, Sgt. Robertson, and Detective Illyes had earlier participated in and reviewed surveillance of a silver Ford Expedition believed to be driven by 'Chu.'" In paragraph 19, Quiroz alleges that "Agents Hall, Salley, Sabata, and Mitten obtained a warrant to search the Quiroz home and arrest Mr. Quiroz, while knowing that they lacked probable cause."  Finally, in paragraph 20, Quiroz alleges that "Defendants, Agent French, Agent Coulson, Agent Crafton,

4

Sgt. Robertson, and Detective Illyes were also aware that Mr. Quiroz was not 'Chu,' and that there was no lawful basis to seek a warrant, but they allowed his arrest to proceed."

It is true, as defendants point out, that the majority of plaintiff's complaint is much less specific than the few paragraphs just quoted. Generally, throughout his complaint, Quiroz refers to all of the individuals he has sued collectively as "defendants" or "all defendants." However, reading Quiroz's complaint as a whole makes it clear that he is alleging that each defendant was involved in obtaining an arrest warrant for Quiroz knowing they had no probable cause, and/or participating in his arrest without probable cause, and/or conspiring to have him arrested and prosecuted in federal court without cause, and/or misleading the U.S. Attorney's office or not providing exculpatory evidence to the U.S. Attorney for the express purpose of having Quiroz prosecuted in the drug conspiracy case on which all the defendants were working. It is true that many of Quiroz's factual allegations are rather vague and generalized at this point. However, as the Court has already pointed out, "a complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses Assn. v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986).

In this case, the Court concludes that under the notice pleading standard Quiroz has adequately pleaded that all defendants were involved in acts that allegedly deprived him of his rights. This is especially true when all of his allegations are viewed in a light most favorable to him. Therefore, Quiroz's lack of greater specificity in his complaint does not require that his complaint be dismissed on that basis.

### 2. Lack of Personal Jurisdiction Over Some of the Defendants.

Defendants also argue that Quiroz's "causes of action as they relate to defendants Sabata,

French, and Coulson did not accrue in Illinois.  None of them lives in Illinois, nor did any of them work in this state. . . . As their affidavits attest, Agents Sabata and Coulson live and work in Indiana.  Agent French lives and works in Tennessee."  Defendants' Memorandum, p. 5. However, this argument about an alleged lack of personal jurisdiction was presented while this case was still pending in the Northern District of Illinois.  Now that the case has been transferred to the Northern District of Indiana, this argument is no longer a valid basis to dismiss the complaint as to these defendants (assuming it would have been anyway).  Defendants Sabata and Coulson state expressly that they live and work in Indiana.  As for defendant French, he states that he was "In March 2009, I was transferred by the [ATF] to the office located in Nashville, Tennessee. . . . I was not involved in any way in the investigation or prosecution of Jose Quiroz after April 18, 2009."  Defendants' Memorandum, Exh. A, Affidavit of Mickey L. French. Again, this affidavit was prepared and attached to defendants' motion to dismiss for the purpose of challenging the jurisdiction of the court in the Northern District of Illinois.  Also, French does not deny that he was involved, to some degree and at some point in time, in the drug investigation here in the Northern District of Indiana.  In fact, defendants specifically state that "[t]hese defendants worked in Indiana and they investigated crimes that occurred in Indiana." *Id*., p. 7.  Therefore, defendants' argument about a lack of personal jurisdiction in the Northern District of Illinois is not applicable in this district and does not constitute a ground to dismiss Quiroz's complaint as to Sabata, Coulson or French.[2]

---

[2] As a general rule, a court's analysis of a motion to dismiss must be based only on the allegations in the complaint and not on any extraneous evidence, such as affidavits.  *See United States v. $85,201.00 in U.S. Currency*, 2011 WL 612067, *2 (S.D.Ill. Feb. 15, 2011).  In this case, defendants submitted affidavits and attached them as exhibits to their memorandum. Normally the court could not consider such evidence without converting the motion to dismiss to

### 3. Statute of Limitations.

Defendants next argue that Quiroz's complaint must be dismissed since it was filed beyond the applicable statute of limitations. More specifically, defendants Sabata, French, Coulson, and Robertson argue that they "did not participate in Quiroz's arrest in April 2009." Defendants' Memorandum, p. 10. Consequently, they maintain, Quiroz's allegations against them are barred by the two-year statute of limitations since Quiroz never named them as defendants until he filed his first amended complaint on April 19, 2011, more than two years after these defendants had any involvement in the investigation that resulted in Quiroz's arrest. *Id*. For example, Coulson states in his affidavit that he "was not involved in any way in the investigation or prosecution of Jose Quiroz after April 18, 2009." *Id*., Exh. A., Coulson Affidavit, ¶ 7. Since Quiroz was arrested on April 19, 2009, Coulson claims any claims asserted against him are barred by the statute of limitations. The other defendants assert the same defense. *See Affidavits of French, Sabata and Robertson*, Defendants' Group Exh. A. They all claim to have had no involvement in this case after April 18, 2009, two years and one day before Quiroz named them in his first amended complaint.

Quiroz argues, however, that "[f]or the purposes of a false arrest claim, the cause of action is ripe at the time of the arrest and fully accrues at the time when a detainee is held in front of a magistrate." Plaintiff's Response, p. 10 (citing *Wallace v. Kato*, 549 U.S. 384, 391

---

a motion for summary judgment. Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993) ( *citing Carter v. Stanton,* 405 U.S. 669, 671 (1972)). However, since in this case the affidavits do not change or otherwise affect this Court's analysis, this procedural issue is moot.

(2007). Indeed, the Supreme Court held in *Wallace* that the "statute of limitations on [plaintiff's] claim [for false arrest] commenced to run when he appeared before the examining magistrate and was bound over for trial." *Wallace*, 549 U.S. at 391. Since it is undisputed that Quiroz was arrested on April 19, 2009, and appeared before a magistrate on that same date, the statute of limitations for his false arrest claim also began to run on that date.

Quiroz also argues that defendants misinterpret his claims when attempting to assert their statute of limitations defense. He claims that "Defendants misread [the statute of limitations] standard and instead propose that the date of a Defendant's last actions [is] controlling. Even if Defendants' Affidavits were assumed factually accurate and admissible (which Plaintiff denies), Defendants' argument fails. Plaintiff alleges that all Defendants caused his false arrest, by among other things, misleading the prosecutors to obtain an arrest warrant. However, the date that Defendants passed along false and misleading evidence is not the controlling date for the purposes of statute of limitations. . . . Fourth Amendment false arrest violations include causing someone to be arrested where no probable cause exists. *See Juriss v. McGowan*, 957 F.2d 345, 350-51 (7th Cir. 1992) (false arrest claim involving facially valid warrant is proper 'where officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause[.]'"). Plaintiff's Response, p. 11. Finally, Quiroz argues that his "Failure to Intervene claim alleges that *all* Defendants had an opportunity to stop the . . . arrest, which they knew lacked probable cause, and failed to do so." *Id*.

The Court finds that the statute of limitations defense is not a valid ground for dismissal of this lawsuit as to defendants Sabata, French, Coulson, and Robertson. First, their affidavits are not to be considered for purposes of the present motion to dismiss since the Court has not

8

(and is not inclined to) convert this motion to a motion for summary judgment (see footnote two, above). Second, Quiroz's arguments are more than adequate to withstand a motion to dismiss on this issue. His original complaint was filed on March 25, 2011, less than two years after his arrest. While Robert Hall was the only specifically named individual defendant, the complaint also listed "Unknown Federal Agents" as additional defendants. His first amended complaint, which specifically named Sabata, French, Coulson, and Robertson as defendants, was filed within two years of the date of his arrest, and accuses these defendants of acts that facilitated that allegedly false arrest (or refusing to prevent it). The only "evidence" defendants present in support of their statute of limitations defense is their group Exhibit A containing their affidavits, which are improperly before the Court for purposes of a Rule 12(b)(6) motion to dismiss. Aside from that they have nothing, other than their blanket assertion in their briefs that these four defendants had nothing to do with investigating Quiroz after April 18, 2009, two years and one day before he filed his *amended* complaint. This is not a sufficient basis for dismissing Quiroz's claims against them.

### 4. Arrest Pursuant to Facially Valid Warrant.

The defendants also move for dismissal of Quiroz's Fourth Amendment false arrest claim on the basis "that his arrest was pursuant to a facially valid warrant." Defendants' Memorandum, p. 6. They argue that "Quiroz was indicted on drug trafficking charges by the federal grand [jury] sitting in the Northern District of Indiana. That court then issued an arrest warrant for Quiroz as required by [Fed.R.Crim.P. 9(a)]." *Id.*, pp. 6-7. Defendants maintain that "[a]n indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Id.*, p. 7 (quoting *Sivard v. Pulaski*

*County*, 17 F.3d 185, 189-190 (7th Cir. 1994)).  "A constitutional warrant forecloses a

*Bivens* claim for false arrest."  *Id*. (citing *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301-302

(7th Cir. 2011); *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009)).

Quiroz counters that the arrest warrant was *not* valid, since the officers obtained it knew

they did not have probable cause to arrest him.  Plaintiff's Response, p. 13.  Quiroz argues that

"[t]he heart of Plaintiff's claim is that Defendants intentionally and/or recklessly misstated

material facts in obtaining their warrant against him."  *Id*.  In support of his position, Quiroz

cites, *inter alia*, the Seventh Circuit case of *Juriss v. McGowan*, in which the court explained as

follows:

> Generally, a person arrested pursuant to a facially valid warrant cannot prevail in
> a § 1983 suit for false arrest; this is so even if the arrest warrant is later
> determined to have an inadequate factual foundation.  *Baker v. McCollan,* 443
> U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979)[.] . . .  There was (and
> still is), however, a recognized exception for situations where officers responsible
> for bringing about an unlawful arrest knew that the arrest warrant had issued
> without probable cause; this is particularly true of officers who knew that those
> who obtained the warrant had deceived the authorizing body.  *Malley v. Briggs,*
> 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986); *Olson v. Tyler,*
> 771 F.2d 277, 281 (7th Cir. 1985).  Under these circumstances, even a facially
> valid arrest warrant does not shield otherwise unreasonable conduct.

*Juriss v. McGowan*, 957 F.2d 345, 350-351 (7th Cir. 1992).  It is black letter law that a facially

valid warrant generally shields officers from liability for false arrest, but that a warrant obtained

through false representations to the issuing authority or by officers who recklessly disregarded

the truth in order to secure the warrant does not preclude a Fourth Amendment claim.  In this

case, Quiroz alleges that the defendants knew they did not have probable cause to arrest him but

obtained the warrant anyway.  He further alleges that all of the defendants are liable for this

alleged Fourth Amendment violation since "all Defendants participated in this misconduct."

10

Plaintiff's Response, p. 13.  Once again, it is not the task of this Court, when ruling on a motion

to dismiss, to weigh the evidence or attempt to assess its veracity or believability.  Quiroz's

allegations are clear–he claims the defendants conspired to obtain an arrest warrant without

probable cause and this resulted in a violation of his Fourth Amendment rights.  This is sufficient

to withstand a motion to dismiss for failure to state a claim.[3]

### 5.  Withholding of Exculpatory Evidence.

Defendants argue that Quiroz's claim that they withheld exculpatory evidence in order to

ensure that he was prosecuted in the drug conspiracy case should be dismissed.  They maintain

that "[n]owhere in his complaint does Quiroz identify which specific defendant withheld what

'material exculpatory evidence.'" Defendants' Memorandum, p. 7.  Furthermore, they argue that

"[g]enerally, there is no *Brady*[4] violation where the criminal defendant has not been convicted.

---

[3] In their reply brief, defendants argue that Quiroz has not presented any factual support for his claim that the arrest warrant was obtained without probable cause.  Defendants' Reply, p. 10.  Instead, they argue, "the well-pleaded factual allegations established only that seeking and obtaining a warrant for Quiroz was based on a mistake, that is, defendants did not know that they had the wrong guy." *Id.*, pp. 10-11.  Defendants point out, correctly, that the "execution of a valid arrest warrant against the person named in the warrant does not violate the Fourth Amendment even if, because someone has made a mistake, the person named in the warrant may not be the person whom the authorities intended to arrest." *Id.*, p. 11 (citing *Johnson v. Miller*, 680 F.2d 39, 41 (7th Cir. 1982)).  This is not how the Court reads Quiroz's complaint.  He does not allege that defendants mistakenly had the "wrong guy."  Rather, he alleges that they *knew* he was not "Chu," knew he was not involved in the drug conspiracy, but proceeded to obtain an arrest warrant anyway.  Defendants may believe that Quiroz's allegations and theories are baseless and/or fanciful, but that does not change the analysis on a motion to dismiss.  Once again, the Court points out that "a complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses Assn. v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986).

[4] Quiroz's due process claim for failure to disclose exculpatory evidence (in this case, the fact that he was not "Chu") is based, of course, on *Brady v. Maryland*, 373 U.S. 83 (1963).

11

[Citing *Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2008).] . . . Here, Quiroz never even went to trial. Since *Brady* does not require that disclosure of exculpatory information be made before trial, *United States v. Allain*, 671 F.2d 248, 255 (7th Cir. 1982), there is no cause of action for a *Brady* violation here." *Id*., p. 8.

Quiroz argues that the fact that he never went to trial, and the charges against him were eventually all dismissed, does not preclude his *Brady* claim. Plaintiff's Response, pp. 14-15. He argues that defendants knew from the outset (even before they arrested him, according to his version of the facts) that he was not "Chu." That they had video surveillance of "Chu" and knew that "Chu" had tattoos on his back, so they knew that "Chu" and Quiroz were not the same person. He claims they knew what type of vehicle "Chu" drove and that Quiroz did not drive such a vehicle. He also claims that because they had audio recordings of telephone calls involving "Chu," they knew that the voice on the recordings was not Quiroz's. *Id*. Quiroz claims that "all of this taken together is obviously favorable because had the prosecutors become aware of this information, Mr. Quiroz would have never been charged." *Id*., p. 15. Finally, Quiroz argues that "[i]f this glaring evidence had been presented to the prosecutors, Mr. Quiroz would never have been charged at all, let alone charged as 'Jose Quiroz a.k.a. Chu' and prosecuted for eighteen months." *Id*.

Whether a valid *Brady* claim can be asserted by a defendant who never went to trial, and whose charges were dismissed, is an open question in the Seventh Circuit. The Seventh Circuit addressed this issue in the case of *Mosley v. City of Chicago*, 614 F.3d 391 (7th Cir. 2010). The court explained as follows:

We begin our analysis by determining what Mosley would need to show to

prevail on a *Brady* due process violation claim. A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. *Youngblood v. West Virginia,* 547 U.S. 867, 869, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006). The *Brady* duty extends to impeachment evidence as well as exculpatory evidence. *Id.* at 870, 126 S.Ct. 2188. A defendant may demonstrate that a *Brady* violation has occurred by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In granting summary judgment, the district court identified the logical tension inherent in claiming a *Brady* violation occurred when the predicate trial resulted in an acquittal—exculpatory evidence coming to light after the trial would reaffirm, not undermine, the confidence in a not guilty verdict. Several of our sister circuits have held that the standard set out in *Kyles* indicates that a trial that results in an acquittal can never lead to a valid claim for a *Brady* violation because the trial produced a fair result, even without the exculpatory evidence. *See Morgan v. Gertz,* 166 F.3d 1307, 1310 (10ᵗʰ Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); *Flores v. Satz,* 137 F.3d 1275, 1278 (11ᵗʰ Cir. 1998) (finding no *Brady* violation in the face of an acquittal because *Brady* protects a defendant from an unfair trial and an acquitted defendant does not suffer the effects of an unfair trial); *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6ᵗʰ Cir. 1988) (holding that where criminal charges are dropped before trial, and thus the underlying criminal proceeding terminated in an appellant's favor, there is no injury caused by the act of suppressing exculpatory evidence). *But see Haupt v. Dillard,* 17 F.3d 285, 287–88 (9ᵗʰ Cir. 1994) (holding that where the trial judge was biased, defendant's acquittal speaks only to the amount of damages due and is irrelevant to whether he has a cause of action for a violation of his due process right to a fair trial). Our circuit has not directly resolved whether a plaintiff can assert a claim for a *Brady* violation when the trial resulted in an acquittal. We were recently confronted with this issue in *Bielanski v. County of Kane,* 550 F.3d 632, 644 (7ᵗʰ Cir. 2008). However, we did not directly address the question because we found that even if we recognized a cause of action for a *Brady* violation when the trial results in an acquittal, the plaintiff in *Bielanski* would still have failed to state a claim. In coming to that conclusion, we set aside the issue of whether such a claim could potentially exist. We held that to state a *Brady* violation claim when the criminal trial ended in acquittal, if such a claim exists, the plaintiff would need to show that "the decision to go to trial would have been altered by the desired disclosure." *Bielanski,* 550 F.3d at 645 (citing *Carvajal v. Dominguez,* 542 F.3d 561, 570 (7ᵗʰ Cir. 2008)).

*Mosley*,  614 F.3d at 396 -397.  Quiroz argues that "the reasoning [in *Mosley*] is equally

instructive here.  According to Quiroz, had the defendants not withheld the alleged exculpatory evidence (i.e., that Quiroz was not "Chu"), he would not have been charged with federal crimes and would not have endured prosecution for 18 months before the charges against him were dismissed.

Defendants claim that the issue *has* been resolved, and that the Seventh Circuit has recently held that "when charges are dismissed pre-trial, a civil due process claim 'falls outside of the exception recognized in *Brady*.'" Defendants' Reply, p. 12 (citing *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011)).  However, the holding in *Ray* is not as directly on point as defendants represent.  In *Ray*, the defendant asserted a malicious prosecution claim.  The district court dismissed that claim, based largely on the fact that the charges against Ray were dismissed at her first post-arrest hearing.  On appeal, Ray "attempted to recast the malicious prosecution claim set forth in her complaint as a *Brady* claim . . ."  The Seventh Circuit did state that "Ray has failed to identify a single instance, however, where we have allowed such suits when the individual is merely charged with a crime, but never fully prosecuted."  *Ray*, 629 F.3d at 664 (internal citations omitted).  In the present case, however, Quiroz was charged and prosecuted for 18 months before the government moved to dismiss the charges, making this case factually distinct from *Ray*, where charges were dropped almost immediately.  The language and holding in *Ray* does not foreclose the possibility of a valid *Brady* claim notwithstanding the fact that Quiroz never went to trial.  If, as the Seventh Circuit stated in *Mosley*, a *Brady* claim might be valid even following an acquittal, then it arguably stands to reason that such a claim could be asserted by a defendant who argues that a *Brady* violation wrongly resulted in him being charged with multiple federal drug conspiracy charges, detained (albeit for only one day), and prosecuted

14

for 18 months before the charges were dismissed.[5]  In any event, the unresolved nature of this

issue in this circuit means that it is not a valid ground for dismissal of Quiroz's due process

claim.

### 6. Failure to Intervene to Prevent Arrest and Civil Conspiracy.

Defendants argue that Quiroz cannot maintain any claim that any defendants failed to

intervene to prevent what they allegedly knew was a false arrest.  According to defendants,

"Quiroz has not alleged any facts from which i[t] could be found plausible that any defendant not

involved in arresting him knew the arrest was unlawful or had a realistic opportunity to intervene

to prevent the harm from occurring."  Defendants' Memorandum, p. 9.  Defendants also argue

again that a "valid arrest warrant" had been issued in this case "*commanding* each defendant to

arrest Quiroz."  *Id*. (italics in original). Finally, defendants state that "[t]o show a civil

conspiracy, Quiroz must show an agreement to accomplish either an unlawful purpose or a

lawful purpose by unlawful means."  *Id*. (citing *Mosley*, 614 F.3d at 399).  According to

defendants, "Quiroz does not allege any facts to establish the plausibility of a common scheme."

*Id*.  Once again, however, the Court finds that Quiroz has alleged facts in his complaint which,

taken as true and viewed in a light most favorable to him, adequately state that even before the

arrest warrant was issued, defendants had knowledge that Quiroz was not "Chu" and that he was

not involved in the drug conspiracy they were investigating.  Quiroz alleges, of course, that

defendants deliberately and knowingly presented false information in order to secure his arrest

---

[5] It is undisputed that when the charges against Quiroz were dismissed on the
government's motion, they were dismissed without prejudice.  Thus, as Quiroz is quick to point
out in his briefs, the charges could be reinstated anytime within the applicable statute of
limitations.

warrant. He claims that they conspired to have him charged and arrested even they knew (so he claims) that they had no probable cause to do so. Whether Quiroz's claims seem plausible or not is not the issue. That determination can only be made by a jury. At this point, however, these allegations are sufficient to withstand a motion to dismiss.

### 7. Malicious Prosecution Claim Against the United States.

Quiroz alleges that the defendants intentionally caused him to be prosecuted in federal court, and asserts a malicious prosecution claim under Indiana law. The parties agree that a plaintiff alleging malicious prosecution under Indiana law must establish the following elements: "(1) the defendant . . . instituted or caused to be instituted an action against the plaintiff . . .; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *United Consumers Club, Inc. v. Bledsoe*, 441 F.Supp.2d 967, 975-976 (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001)). In the present case, defendants argue that Quiroz cannot make out this *prima facie* case since the underlying "criminal case was not one that terminated in [his] favor." Defendants' Memorandum, p. 10. The defendants argue that because the charges against Quiroz were dismissed without prejudice, meaning he could be reindicted at any time prior to the expiration of the statute of limitations, such a termination was not in favor of Quiroz. *Id*. Defendants claim that "[u]nder Indiana law, a voluntary dismissal without prejudice is not considered to be on the merits and cannot be the basis for a malicious prosecution claim." *Id*., p. 11 (citing *Walker v. Toyota Motor Credit Corp.*, 2007 WL 2500177 *3 (S.D. Ind. Aug. 30, 2007)). Furthermore, defendants state, "[f]or purposes of malicious prosecution claims, Indiana courts have explicitly stated that a prosecution has not terminated in a party's favor when

16

original claims were left open for later prosecution." *Id*. (citing *Strutz v. McNagny*, 558 N.E.2d 1103, 1107 (Ind.App. 1990)).

Quiroz counters by arguing that the cases cited by defendants, i.e., *Walker* and *Strutz*, were civil cases, not criminal cases, and so they are not analogous. Quiroz then claims that "Indiana has recognized that the withdrawal of the proceedings by the person bringing them can constitute favorable termination for the purposes of a malicious prosecution claim." Plaintiff's Response, p. 21 (citing *Kho v. Pennington*, 846 N.E.2d 1036, 1041 (Ind.Ct.App. 2006)). But *Kho* was also a civil case. In that case, the plaintiff, Dr. Kho, had been sued by defendant Pennington's law firm. Pennington later dismissed Dr. Kho by stipulation. Dr. Kho nevertheless brought a malicious prosecution claim against Pennington and the Indiana appellate court held that such a voluntary dismissal could still form the basis for a malicious prosecution claim. It is unclear from the opinion whether the dismissal of Dr. Kho was or was not without prejudice, although the implication is (especially since he was dismissed by agreement of the parties) that Dr. Kho could not be sued again for the same claims. That is not the case with Quiroz, who could still be reindicted if the government chose to revive the charges against him.

Neither defendants nor Quiroz cite any cases exactly on point on this issue. And, in fact, this Court's research into the issue did not disclose a clearly dispositive case. However, the language in the *Walker* case cited by defendants, even though it was not based on an underlying criminal case, appears quite instructive. In *Walker* the court held as follows:

> Here, Toyota's counsel reached an agreement with Walker's counsel to voluntarily dismiss the replevin action without prejudice pursuant to Indiana Trial Rule 41. Under Indiana law, such a dismissal is not considered to be on the merits. *See* Ind. Trial Rule 41(a); *Ilagan v. McAbee,* 634 N.E.2d 827, 829 (Ind.Ct.App.1994) (providing that dismissal with prejudice is one on the merits

17

and conclusive as to the rights of the parties). *See also Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 106-77 (7th Cir.1987), *reh'g denied* (explaining the differences between Federal Rule of Civil Procedure 41(a) and 41(b)); *Ind. Farmers Mut. Ins. Co. v. Richie,* 707 N.E.2d 992, 997 (Ind.1999) (providing that Indiana courts may look to federal decision for guidance to interpret Indiana's Trial Rules because those rules are based on their federal counterparts). In fact, for the purposes of malicious prosecution claims, Indiana courts have explicitly stated that a prosecution has not terminated in a party's favor when original claims were left open for later prosecution or when the original proceeding ended by agreement or settlement. *See Strutz v. McNagny,* 558 N.E.2d 1103, 1107 (Ind.Ct.App.1990) (concluding that summary judgment was appropriate where purpose of dismissal order in original case was to leave open the ability to present the claim in another proceeding); *Wong v. Tabor,* 422 N.E.2d 1279, 1284 (Ind.Ct.App.1981) (citing with approval W. Prosser, Law of Torts § 854 (4th ed.1971)). Based on the foregoing authority, Walker's claim for malicious prosecution is doomed.

*Walker v. Toyota Motor Credit Corp*., WL 2500177, * 3 -4 (S.D.Ind. 2007).

It appears clear that in order to pursue a malicious prosecution claim under Indiana law, the plaintiff must establish that the dismissal of the underlying charges against him were clearly and unequivocally terminated in his favor. Quiroz cannot do this, since the dismissal of his charges was without prejudice and he could be reindicted at any time prior to the expiration of the applicable statute of limitations. The dismissal was not the result of any determination of the merits of the underlying criminal charges. While the dismissal of the charges against Quiroz was certainly favorable to him in the generic sense, it was not favorable in the legal sense and, therefore, his malicious prosecution claim under Indiana law must be dismissed.

**CONCLUSION**

For the reasons discussed above, the motion to dismiss filed by defendants (docket at 71) is GRANTED in part and DENIED in part.  The motion is granted as to plaintiff's state law claim against the United States for malicious prosecution; the motion is denied as to all other claims.

Date: December 3, 2012..

/s/   William C. Lee

William C. Lee, Judge

United States District Court

Northern District of Indiana